## TRAVER *v.* BROWN.

---

PATENTS; INTERFERENCE; ABANDONED EXPERIMENT; PRIORITY
OF INVENTION.

Where in an interference proceeding involving priority of invention
of an improvement in looping and trimming machines, the
testimony showed that the junior applicant constructed and
tried an apparatus embodying the issue in 1889, which proved
unsatisfactory and disappointing to him and which he boxed
up and laid away in his shop until the latter part of 1892 or
early part of 1893, during which time he made other inven-
tions in the same art for which he received patents, and that
the senior applicant filed his application on January 26, 1893,
about which time his rival sent his apparatus to his attorneys
for the purpose of preparing an application, it was *held,* that
what the junior applicant did in 1889 amounted only to an ex-

> periment which was abandoned and revived only after the appearance of the senior applicant in the field, and that the latter was entitled to an award of priority.

Patent Appeals. No. 101. Submitted November 17, 1898. Decided January 3, 1899.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. George W. Rea* for the appellant.

*Mr. Franklin Scott* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference proceeding between rival claimants of the invention of an improvement in looping and trimming machines. These machines, called "turning-off machines," have been long in use for the purpose of uniting the edges of knit fabrics. They have a sewing mechanism operating in connection with a circular plate which carries on its periphery a row of projecting pins.

The two pieces to be sewed together are fastened to this plate, so that one of the pins shall pass through each of a course of loops near the raw edges of the fabrics, which lie one upon the other. The rotation of the plate or pin-wheel brings the loops in succession under the sewing-needle, which operates between the pins aforesaid.

In order that the machine may operate successfully, it is necessary to trim the rough edges down to the loops that are impaled upon the pins, and unless this be done, and all the raveled threads or loose waste be removed before passing under the needle, the seam will be made with an unsightly welt. Formerly the surplus edges were sheared and the loose waste brushed out by hand. Later, several kinds of automatic shearers and trimmers were introduced into the mechanism, some of which embraced devices for brushing out the selvage when cut away.

The appellant, Adelbert Lee Traver, was an inventor in this art, and received patents for improvements on September 10, 1889, and July 8, 1890, respectively. In the improved machine built under the last patent he introduced what he calls a "stitch-breaker" in the form of a pointed blade that enters in succession the loops above the course impaled upon the pins of the pin plate or wheel. The blade is vertical instead of flat, and has a horizontal lower and an inclined upper edge, neither of which is sharp. Having no cutting edge, it enters the loop at the top and breaks it by tension.

On January 26, 1893, Eugene H. Brown filed his application for a patent for an improvement in these trimming or "turning-off" machines, which was followed by one from Traver on February 15, 1893.

The interference between these was declared on June 11; 1895, and the subject-matter involved was stated as follows:

"In a machine for sewing looped fabrics, the combination with a pin-plate having its pins for supporting the fabric disposed in a horizontal plane, of a trimming mechanism comprising a blade having a tapering point and a cutting edge laterally diverging from the base of said point, said blade being disposed in a plane that will cause its cutting edge to lie substantially parallel with the plane of the pins, and close to and slightly above said pins, means for reciprocating said blades, and means for removing the severed loops from the fabric, whereby the point of said blade will first enter the loops to be cut and then its cutting edge will sever the said loops at one side only and close to the pins, to the end that said severed loops will be of unequal lengths, thus insuring their ready removal."

The testimony shows that Brown conceived the invention about September 11, 1891, and that he immediately constructed a machine and tested it. As early as October 9, 1891, he had some of his machines in use in the factory of the Valentine Knitting Company, at Bennington, Vt., where

he resided. A slight improvement was made after the trial of the first of these. They worked in a satisfactory manner, and many were soon manufactured and disposed of to the trade. An attempt was made to show that Brown procured his knowledge of the new blade and its mode of operation from Traver; but the evidence is unsatisfactory, and is not of sufficient importance to be discussed.

The burden of proof is upon Traver, as the junior party, to overcome the case of Brown, as stated above, by proof of earlier conception and reduction to practice. He testified that he conceived the invention of the blade as defined in the issue about January 1, 1889, and that he constructed a " turning-off machine " on February 13, 1889, into which he introduced the said blade and operated it by means of a belt attached to the fly-wheel of a foot-lathe; the mechanism of the pin-wheel and sewing-needle were operated at the same time by hand; that from six to twelve pieces of knit goods were attached to the pin-wheel and sewed together on that trial in a satisfactory manner; that the machine was then boxed up and laid away in the shop until about the last of the year 1892 or early in 1893, when it was shipped to his attorneys for the purpose of preparing an application for a patent. He produced the machine, and stated that it had remained without change in any particular. Mrs. Stickles, a witness for Traver, testified that she was an expert operator upon the " turning-off " machines in use before that date, and that she arranged the pieces upon the pin-wheel, and did the stitching at Traver's request. She corroborates him in respect of the satisfactory working of the machine so far as tried.

A. A. Traver, a cousin of the appellant, was present at the trial and saw the work done by the machine, none of which has been preserved. Several other witnesses saw the machine in the box during the time that it remained, but did not examine it closely.

In considering this and other evidence it must be remem-

bered that the improved machine consists of the familiar pin-wheel and sewing mechanisms, which furnish its bulk, and all that is new or claimed as invention is in the shape and manner of operation of the loop-cutting and removing device, which occupies a very small as well as inconspicuous place.

The testimony of Mrs. Stickles and A. A. Traver is too indefinite to amount to proof that the blade now attached to the exhibit machine is the same that was actually used on that trial. This point, however, is not of controlling importance and need not be further pursued.

Passing it by, and conceding that this experimental machine was constructed and tried on February 13, 1889, with the identical blade now shown therein, the question occurs— did what was then done amount to anything more than an experiment that was abandoned and has only been revived since Brown's appearance with a successful device of the same general character? The Commissioner of Patents was of the opinion that it did not; and the testimony, as we view it, does not warrant us in disturbing his decision.

Setting the machine aside after that trial, and preserving no samples of its work, Traver continued his search for an improvement in the loop-raveling device. Turning away from the flat-lying blade, he gave his attention to one of a different character. This was his "stitch-breaker," before referred to as patented July 8, 1890, No. 431,957, upon application filed September 27, 1889. The reasons given by him, when testifying, for laying aside the first invention and turning his attention to the stitch-breaker, which he developed and brought into commercial use, were, first, that he considered the latter the best and most effective machine; and, second, that he believed the patent for it fully covered the other for want of any patentable difference between the two.

Afterwards, when Brown's improvement came into rapidly-growing use and demonstrated its efficiency in competition

with the "stitch-breaker," he filed a bill against him for infringement in the United States Circuit Court for the District of Vermont. That court sustained his claim that the Brown device was an infringement of Patent No. 431,957; but its decision was subsequently reversed on appeal to the Circuit Court of Appeals. *Brown* v. *Traver*, 70 Fed. Rep. 810. The date of that decision does not appear in the record, but the report of the case shows that it was rendered December 2, 1895. 70 Fed. Rep. 810. It had not been rendered when Traver's first deposition was taken in this proceeding.

In the old machine of February 13, 1889, the flat-lying blade operated in close contact with an under plate with a beveled edge, by reason of which there was a shearing operation in cutting off the edges of the fabric. This blade is shorter than Brown's, and has several small notches that move also over the beveled edge of the under plate and operate in removing the waste.

Brown's blade is longer and has a long sharp cutting edge laterally diverging from the base of the needle-like point.

When cross-examined in relation to Brown's specification showing a long cutting-knife without a supporting or co-operating under plate as above, Traver said that, without another blade or support to cut against, the knife would become dull in a short time, and then break the loops instead of cutting them, as intended. Thus from a loop-cutter it would soon be converted into a loop-breaker or raveler. The merit claimed for Brown's device lies in the fact that the cutting-blade acts independently of any under plate or support for the fabric. Synchronizing in movement with the feeding pin-wheel, its needle-like point penetrates each loop in succession, and the gradual-widening blade with sharp cutting edge follows and cuts the loop as desired on one side, without the aid of a plate to shear against and with no other support for the thrust than is furnished by the impaling-pin of the pin-wheels. Cutting in this way, the long end of the loop-thread is thrown upon the fingers of

the following clearing device (the short end being left free) and is by them removed without resistance before the needle is reached.

Operated as was the experimental machine of Traver on February 13, 1889, the feed was likely to be irregular, whereby a loop might be passed ,uncut, or two loops might be cut at the same time. If the latter occurred in the shearing action of the blade upon the beveled-edge supporting-plate, two short threads would be left, one of which would likely be carried on under the needle and become fastened in the seam, and this was one of the defects of the old trimmers that was sought to be overcome.

Grant that the work done on that trial may have been better than that of the former machines with which the operator was familiar, and still we are constrained to believe that difficulties did present themselves at the time which made the operation of the machine, with the blade as then attached, unsatisfactory and disappointing to Traver, and caused him to abandon the device and direct his efforts to the invention of a different one. He went to work again and produced his new vertical blade, before described. This has no supporting or shearing plate, but operates in the slot of a guide-plate that supports the fabric merely, while the blade strains and breaks the loop and probably operates to confine that strain to the particular loop engaged and prevent the pulling of the fabric.

After obtaining the patent for this device and engaging largely in its manufacture he published a circular to the trade, wherein he said:

"I call your attention to the fact that I have dispensed with the use of cutting edges and therefore have no elements in my stitch breaker and ravelers that require to be sharpened."

Again, it was shown that when testifying in the infringement suit aforesaid he had said that he had never been able to make a raveler work successfully with a sharp edge. We

have heretofore referred to his evidence in this case to the effect that without a supporting under blade to shear against the knife would soon become dull and fail to operate as a cutter.

The foregoing statements can not be reconciled with the claim that he had as early as February, 1889, invented and successfully reduced to practice the device of the issue. *Beals* v. *Finkenbiner*, 12 App. D. C. 23, 29, 31. He admitted also that he had never made for the trade a duplicate of the first device, though he said that he had made others substantially like it. His improved machine, called "The Wish-Bone Raveler," is the one that he has been making chiefly during this controversy, and in it the flat-lying blade operates free and clear of an under plate. It has substantially the shape and operation of Brown's successful device, and is to that extent a departure from the old one.

It may be added in this connection as having some weight in the consideration of the question, that if the old machine did the work claimed for it on February 13, 1889, in such manner as to demonstrate the satisfactory operation of the cutting-blade still attached thereto, it is strange that Traver made no effort during the progress of this case through the Patent Office to clean it and make a thorough test of its practical operation. Why he did not undertake to do this does not satisfactorily appear.

The question being, whether what was then done reasonably demonstrated the practical utility of the new cutting device, or was merely an unsatisfactory experiment that led to its abandonment until Brown's successful entry into the field, its solution might have been materially aided by repeating the operation in the same way.

The facts in regard to the test of the old machine, and the surrounding circumstances from which inferences are to be deduced, make out a case, in our opinion, very different from either that of *Coffee* v. *Guerrant*, 3 App. D. C. 497, 499, 501, or that of *Wurts* v. *Harrington*, 10 App. D. C. 149, 155,

both of which have been cited on behalf of appellant. We think, on the other hand, that they bring the case more nearly within the scope of the following decisions, in which it was held that what was done by the claimant fell short of reduction to practice or amounted to nothing more than an abandoned experiment: *Glidden* v. *Noble*, 5 App. D. C. 480, 493, and *Guilbert* v. *Killinger*, 13 App. D. C. 107.

For the reasons given the decision will be affirmed and the proceedings herein certified to the Commissioner of Patents. It is so ordered.                    *Affirmed.*